O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARBARA SUE RUFFIN,** <br><br> Plaintiff, <br><br> vs. <br><br> **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | **Case No. CV 14-2611 KES** <br><br> **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

///

///

1

## I. BACKGROUND.

Plaintiff Barbara Sue Ruffin ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act on October 20, 2011, alleging the onset of disability on July 18, 2011. AR 24.

After the administrative hearing on March 7, 2013 (transcript at AR 39-84), the Administrative Law Judge ("ALJ") issued an unfavorable decision on April 12, 2013. AR 21-34. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "fibromyalgia, degenerative joint disease of both knees, status post two surgeries on the left knee and one surgery on the right knee, obesity, major depressive disorder, and post-traumatic stress disorder."[1] AR 26. The ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [S]he is limited to occasional postural activities; she must avoid concentrated exposure to extreme cold and vibration; she is limited to work involving simple repetitive tasks; and she is limited to work involving no more than occasional contact with co-workers and the public.

AR 28.

Up until 2011, Plaintiff worked as a preschool teacher, and she previously worked as a bank teller and waitress. AR 46-49, 411. The ALJ decided that Plaintiff could no longer perform her past relevant work. AR 33. The ALJ accepted testimony from a vocational expert ("VE") that an individual of Plaintiff's age, education, work experience and residual functional capacity could perform the representative jobs of mail clerk, routing clerk and cleaner. AR 34. Accordingly, the ALJ concluded that Plaintiff was not "disabled" between July 18, 2011, and the date of the decision. AR 34.

## II. ISSUES PRESENTED.

Plaintiff's appeal from the ALJ's adverse decision raises the following two issues:

---

[1] Psychiatric evaluation notes state that 16 years ago, Plaintiff "witnessed a gang fight and death and got robbed at gunpoint." AR 578.

2

> (1) Whether the ALJ erred in granting reduced or no weight to the physical function assessments of treating physicians Green and McIvor and in resting his RFC determination exclusively on the contrary assessments of non-examining review physicians.
>
> (2) Whether the finding that Ms. Ruffin's claims are not credible to the extent alleged is supported by clear and convincing evidence.

JS at 6.

This appeal is about the severity of Plaintiff's pain caused by her fibromyalgia and knee surgeries (*i.e.*, left and right knee replacements in 2009 and 2011, respectively). Between January and July 2012, two doctors reviewed Plaintiff's entire medical record (A. Wong, M.D. at AR 85-96 and S. Brodsky, D.O. at AR 97-110) while a third examined Plaintiff (A. Cruz, M.D. at AR 439-445) and assessed her functional capacity. All three physicians found Plaintiff retained the functional capacity to perform light work with some postural limitations, such as avoiding kneeling, and some environmental limitations, such as avoiding exposure to extreme cold. AR 92-93, 104-06, 444. In contrast, Plaintiff's treating physicians Dr. Green (a family practitioner) and Dr. McIvor (an orthopedic surgeon) opined that Plaintiff was limited to less than sedentary work[2] (AR 349-50, 431-32 [Drs. Green and McIvor found Plaintiff only capable of standing or walking for *less than 1 hour* during a 8-hour work day, sitting for *less than 1 or 2 hours* during a 8-hour work day, lifting and carrying no more than 5 or 10 pounds even occasionally, needing to miss work *more than three times* each month, etc.]; AR 492, 607, 609 [both doctors found Plaintiff incapable of performing full-time work]).

## III.  ISSUE ONE DISCUSSION.

### A.  Legal Standard.

Neither party disputes that Drs. Green and McIvor are treating physicians, and that their opinions concerning Plaintiff's limitations are contradicted by the opinions of Drs. Cruz, Wong

---

[2] If Plaintiff were found capable of only sedentary work, which requires two hours of standing and/or walking per day, she would be found presumptively disabled by the Grid rules due to her age. JS at 21.

3

and Brodsky. When a treating physician's opinion is contradicted by other evidence in the record, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence" for rejecting the treating physician's opinion. Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).

### B. The ALJ Gave Four Specific and Legitimate Reasons Supported by Substantial Evidence for Rejecting the Opinions of Drs. McIvor and Green.

The ALJ gave four reasons for declining to give "any weight" to the highly restrictive opinions of Plaintiff's functional capacity offered by Drs. McIvor and Green. AR 31. Each of the ALJ's four reasons is discussed below.

#### 1. The Treating Physicians' Extreme Opinions Lack Supporting Medical Evidence.

First, the ALJ stated, "The extreme limitations asserted by Dr. McIvor and Dr. Green are not justified by the medical evidence. In particular, there is a lack of objective medical findings to support a residual functionality for work at the sedentary or lesser level." AR 31. Typically, the lack of medical evidence supporting a treating physician's opinion is a legitimate basis to reject it. See, e.g., Edlund v. Massanari, 253 F.3d 1152,1157 (9th Cir. 2001) (rejecting treating physician's opinion that claimant suffered from a herniated disk where no MRI scan ever showed a herniated disk); 20 C.F.R. § 404.1527(c)(3) (in determining the weight to give to the opinion of a treating physician, the ALJ should consider factors such as the degree to which the opinion is supported by relevant medical evidence).

Plaintiff argues that her case is not typical, because (1) Drs. Green and McIvor both based their opinions of her extreme limitations on their diagnosis of fibromyalgia (JS at 18; AR 429, 492, 513 [Dr. Green consistently lists "fibromyalgia" as first diagnosis]; AR 347-48 [Dr. McIvor identifies the "precipitating factors" leading to Plaintiff's pain as only "fibromyalgia?"] and (2) fibromyalgia is not amenable to proof by objective medical means, such as the results of MRI scans or blood tests. JS at 18-19. Defendant rightly points out, however, that Plaintiff is claiming

disability based on conditions other than fibromyalgia, such as degenerative joint disease of both knees. JS at 25. Thus, the ALJ appropriately considered whether there was objective, medical evidence that any of the conditions claimed by Plaintiff might cause the severe limitations found by Drs. Green and McIvor.[3]

The ALJ's finding that the record lacks such medical evidence is supported by substantial evidence. In November 2011, Dr. McIvor noted that although Plaintiff's knees were "doing well," she was still "shooting for full disability due to her fibromyalgia and chronic pain" for which he had made "no" supporting clinical findings. AR 31, referencing "post-operative treatment notes" from Dr. McIvor at AR 322, 347. Similarly, Dr. Green noted Plaintiff had "full range in motion of the extremities, without joint swelling, instability, or muscle atrophy of the arms or legs." AR 30, referencing AR 461, 468, 493. X-rays from September and October 2012 exhibited only "mild degenerative changes to the spine and minimal joint narrowing in the hands" with no other bony or joint abnormalities. AR 30, referencing AR 519-20, 528. X-rays of her post-surgery right knee showed "no abnormality." AR 444. Nerve conduction studies ("NCS") performed in November 2012 were "normal," except for "[m]ild left ulnar entrapment at elbow (*i.e.*, left ulnar nerve slowing)," which the examining physician specifically noted "may not even be clinically significant as far as her widespread complaints." AR 516. Physical examinations also showed "a lack of extremity edema or joint crepitus, and with the exception of her knees, [Plaintiff] maintained good mobility in the joints, and required no assistive device to walk." AR 30, referencing AR 283, 360, 442, 495 (good/full range of motion); AR 493, 510, 525, 534, 595 (lack of cyanosis, clubbing, edema or crepitus); AR 443 (requiring no assistive device to ambulate).

---

[3] The ALJ needs only one legitimate and specific reason supported by substantial evidence to reject the severe limitations found by Drs. Green and McIvor. As a result, the Court need not resolve whether "lack of supporting medical evidence" is a legitimate reason in the context of a fibromyalgia claim.

5

### 2. The Treating Physicians' Extreme Opinions Conflict with the Findings of Examining Physician Cruz.

Second, the ALJ rejected limitations asserted by Dr. McIvor and Dr. Green as "extreme" when compared to "the examination findings of record." AR 31. In other words, the ALJ determined that the opinions of Dr. McIvor and Dr. Green were inconsistent with the examination findings of Dr. Cruz. Again, this is a legitimate reason for rejecting a treating physician's opinions. Morgan v. Commissioner of the SSA, 169 F.3d 595, 602 (9th Cir. 1999) ("Inconsistency between [examining] Dr. Grosscup's and [treating] Dr. Reaves's conclusions provided the ALJ additional justification for rejecting Dr. Reaves's opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ's finding of inconsistency is specific and supported by substantial evidence, because the ALJ provided valid examples. Cf., McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). Here, the ALJ referenced Dr. Cruz's findings that Plaintiff had "normal motor strength" in all of her extremities and could walk without an assistive device, along with Dr. Green's finding that Plaintiff lacked the muscle atrophy that one would expect in a person who spends nearly all of her time lying down. AR 31, referencing AR 441-43, 468. Dr. Cruz even found that Plaintiff could get on and off the examining table without difficulty. AR 443. Dr. Cruz concluded that Plaintiff could sit, stand or walk for 6 hours during an 8-hour day. AR 31, referencing AR 444. These findings are inconsistent with the findings of Drs. Green and McIvor that Plaintiff experiences pain so disabling that she must lie down most of the time (*i.e.*, Plaintiff can only sit, stand or walk for less than 1 or 2 hours during an 8-hour day). Similarly, Dr. Green found that Plaintiff was completely restricted from pushing or pulling or ever lifting more than 5 pounds (AR 432, 435), which is inconsistent with Dr. Cruz's observations that Plaintiff's "range of motion" in her shoulders and wrists was "grossly normal"

and she had normal strength in her extremities (AR 443) and even Dr. McIvor's opinion which did not specify any limitations on pushing or pulling (AR 350-51).

### 3. The Treating Physicians' Extreme Opinions Conflict with Plaintiff's Positive Response to Treatment.

Third, the ALJ rejected limitations asserted by Dr. McIvor and Dr. Green as "extreme" when compared to Plaintiff's "response to treatment." AR 31. The ALJ noted that the "treatment which has been rendered, to include medications, has been beneficial in alleviating her pain, at least to some degree." AR 33.

Again, this is a legitimate consideration. "[F]avorable responses to treatment can undermine a claimant's complaints of debilitating pain." De Herrera v. Astrue, 372 Fed. App'x 771, 774 (9th Cir. 2010); see also Budde v. Callahan, 1997 U.S. App. LEXIS 27175, *3 (9th Cir. Oct. 1, 1997) (unpub.) (rejecting treating physician's opinion where it was inconsistent with a report showing "a positive response to treatment.").

The ALJ's finding that Plaintiff has responded positively to treatment is supported by substantial evidence. The ALJ noted that at the hearing, Plaintiff "explained she used medications for her pain and she described them as helpful." AR 29, referencing AR 58 (Plaintiff described hydrocodone as "helpful" for her pain, but "it makes me go to sleep"[4] and causes nausea) and AR 61 (Plaintiff testified nortriptyline and Cymbalta "help"). Plaintiff told Dr. Green that she did not want to stop the anti-depressant nortriptyline because it was helping. AR 31 referencing AR 493. The ALJ also noted that Dr. Green's own records reflect symptom improvement with medication (AR 31 referencing AR 465 ["Pain as before, not as bad" and "No side effects" to medication], AR 473 ["Some slight decrease in pain" and "ibuprofen 800 starting to bother her stomach does help for pain"]) and that Dr. Green characterized Plaintiff as appearing "comfortable" at her appointments (AR 31 referencing, *e.g.,* AR 285, 287, 289, 290, 294). The ALJ also noted that Plaintiff has "not sought or required treatment in a pain clinic." AR 31. Notes from 2012 treatment at Growth in Action Therapy Services say, "Patient was in good

---

[4] Elsewhere, Plaintiff testified, "I pretty much don't sleep much" because of pain. AR 66.

spirits. She discussed that her pain was mild and had fun during the Labor Day holiday with family." AR 570. The ALJ also noted that in February 2013, Plaintiff was "reporting moderate improvement without any adverse side effects to medication." AR 30 referencing AR 573 (treatment records from Dr. Nallamothu of Inland Psychiatric Medical Group that say, "Medication Response: Moderate improvement" and "Side Effects/Adverse Reactions: Denied"). Plaintiff testified that she had visited Dr. Nallamothu five times. AR 62.

Plaintiff does not dispute that she has obtained some relief from medication. Plaintiff, however, contends that such relief has been "partial" and "intermittent" and therefore not "meaningful." JS at 17. The ALJ, however, did not find that Plaintiff's medication regimen totally and permanently eliminated her pain, but rather that it alleviated her pain sufficiently that Plaintiff could perform light work with additional restrictions. Thus, even partial and intermittent pain relief from treatment tends to undercut the opinions of Drs. Green and McIvor that Plaintiff cannot do even sedentary work.

### 4. The Treating Physicians' Extreme Opinions Rely on Plaintiff's Discredited Subjective Testimony.

Fourth and finally, the ALJ rejected the opinions of Drs. Green and McIvor citing as a reason that they lack "any objective evidence to support restrictions to this degree or extent." AR 31. This is a reference not just to the lack of supporting *medical* evidence, discussed above (*e.g.*, MRI scans or blood tests), but also to the lack of *any* objective evidence that would support the conclusion Plaintiff's pain is so debilitating, she must spend most of her time lying down (*e.g.*, personal observations or videos of Plaintiff performing daily activities, the results of exertion testing, etc.). A treating physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989), citing Brawner v. Secretary of Health & Human Servs., 839 F.2d 432, 433-34 (9th Cir. 1988) (ALJ appropriately found that the medical opinions "were not based on clinical or otherwise reliable evidence, but on [claimant's] own complaints" and because "[claimant's] conduct undermined his credibility, it was reasonable to question the reliability of a physician's opinion"

relying on such complaints); cf., Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (psychiatric evaluation was not based entirely on claimant's subjective complaints where the doctor included his own observations from clinical visits that supported his opinions, such as odd mannerisms, rapid speech and agitation).

Here, the questionnaires completed by Drs. Green and McIvor do not contain any of their own observations of Plaintiff trying to accomplish some exertion-related task, but being unable to do so because of debilitating pain.[5] Instead, both doctors are necessarily relying on Plaintiff's own account of the degree of her pain in opining that it is so severe, she cannot sit, walk or stand for more than 1 or 2 hours each day. Plaintiff's own testimony that she spends most of her life lying down was appropriately found less than credible, for the reasons discussed below in connection with Issue Two. As a result, the ALJ provided yet another "specific, legitimate reason for rejecting the opinion of a treating physician" such as Drs. Green and McIvor. Fair, 885 F.2d at 605.

## IV. ISSUE TWO DISCUSSION.

### A. Legal Standard.

If a claimant produces evidence that he or she suffers from an ailment that could cause pain, then the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Id. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain. Id. (citations omitted). "Excess pain is, by definition,

---

[5] Plaintiff's activities that both doctors would have been able to observe (*e.g.*, driving to appointments, walking unassisted into the office, getting on and off the examining table, looking "alert and comfortable" [AR 63, 443, 285]) are inconsistent with total disability.

pain that is unsupported by objective medical findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

If the ALJ's credibility determination, however, relies on a *conflict* between the medical evidence and the claimant's subjective testimony, then that is a valid reason for rejecting the claimant's credibility. Generally, "conflicts between a claimant's testimony of subjective complaints and the objective medical evidence in the record can constitute specific and substantial reasons that undermine credibility." Brumley v. Comm'r. of Soc. Sec., 2012 U.S. Dist. LEXIS 85771, *20 (E.D. Cal. June 20, 2012), citing Morgan v. Comm'r. of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). To rely on a conflict, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

### B. The ALJ Properly Discredited Plaintiff's Subjective Testimony by Citing Conflicts Between that Testimony and the Medical Evidence.

Here, the ALJ did exactly that. The ALJ "carefully considered the claimant's allegations and testimony of chronic, debilitating pain … precluding the performance of all types of gainful work." AR 33. The ALJ determined that her "subjective allegations are not supported by evidence of record and they *are in conflict with those findings*." Id. (emph. added). For this reason, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible …." AR 29.

Specifically, the ALJ noted that "claimant described a relatively inactive lifestyle, and as having difficulty with virtually every area of functioning, including talking, hearing, seeing, memory and concentration." AR 31. This accurately summarizes Plaintiff's testimony at the hearing and her Adult Function Report.

At the hearing, Plaintiff testified she experienced pain throughout her "whole body" while trying to work as a preschool teacher. AR 52. Now, she "pretty much stays in [her] room" and just "sleeps a lot." AR 54, 61.[6] She spends "at least" 6 hours of each 8-hour day lying in bed or

---

[6] She also testified, "I pretty much don't sleep much" because of pain. AR 66.

on a reclining lounge chair. AR 65. Sometimes for three days at a time, she never leaves her room even to go to the lounge chair. AR 69. She spends "at least four to five" days every week "in [her] room all day."[7] AR 70. She usually stays in her pajamas all day. AR 65. She estimated that she could only sit or stand for 15 minutes. AR 61. She cannot lift a gallon of milk, because such exertion causes "too much pain." AR 60. She does not read because it is too "hard to hold the book." AR 63. She cannot fold laundry because that requires "putting [her] arms up." AR 64. She has "a really hard time writing" because of pain. AR 67.

In her Adult Function Report, she reported, "I don't sleep much. My sleeping pills used to work, but mostly I wake up in pain all night." AR 213. She can only walk for 5-10 minutes. AR 217. She says, "My memory is not too good when in pain too much." AR 214. Similarly, she reported, "If I'm in so much pain I think very slow …." AR 215. In response to a question asking her to check boxes indicating which of 19 items are affected by her condition, she checked all 19 boxes, including seeing, talking and hearing. AR 217. She cannot follow a recipe to make cookies without losing concentration and getting confused. AR 217.

The ALJ found that the severity of Plaintiff's self-reported limitations is inconsistent with medical observations in the record, providing specific examples. The ALJ noted "despite the reporting of [Plaintiff] having pervasive and chronic pain, [Plaintiff] showed no muscle atrophy in the arms or legs." AR 31, referencing findings of Dr. Green (who noted "no atrophy arms or legs" [AR 468]) and Dr. Cruz (who noted muscle "strength is 5/5 in all extremities" which is normal [AR 443]). If Plaintiff were as inactive as she reported (*i.e.*, lying down nearly all the time), then reasonably, there would be at least some evidence of atrophy of her back or legs or diminished muscle strength. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (ALJ properly discredited excess pain testimony because "there is no evidence of disuse muscle atrophy"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly discredited testimony that claimant "experienced constant pain that required her to lie in a fetal position all day" by noting that claimant did not exhibit "muscular atrophy or any other physical signs of an

---

[7] Elsewhere she estimated that 3 or 4 days each week, she can leave her room and prepare a meal requiring minimal exertion, such as microwaving or making a sandwich. AR 64, 214.

inactive, totally incapacitated individual"); Cotton v. Astrue, 374 Fed. App'x 769, 770 (9th Cir. 2010) (unpub.) (ALJ properly discredited testimony that chronic fatigue, pain and fibromyalgia that caused claimant to stay in bed for days, in part, because there was "no objective evidence of a back disorder, loss of motor strength, diminished reflexes, dermatomal loss of sensation, spasm, or loss of joint motion"); Stiles v. Astrue, 256 Fed. App'x 994, 997 (9th Cir. 2007) (unpub.) (ALJ properly discredited excess pain testimony because there was "no evidence of disuse muscle atrophy or wasting commonly associated with severe pain"); Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (unpub.) (ALJ properly discredited excess pain testimony due to "a lack of muscle atrophy and weakness" to support claims of "inactivity, chronic fatigue and bedrest"). The ALJ also noted that typical "manifestations of chronic pain" other than muscle atrophy, such as "joint swelling, heat or effusion, have also not been apparent on examination." AR 31, referencing AR 461, 468 (Dr. Green found "no pedal edema or calf tenderness") and AR 493 ("no crepitus, heat or effusion" and "no joint swelling around the ankles").

Plaintiff argues that the ALJ was improperly practicing medicine by concluding that clinical findings of muscle atrophy "must underlie a claim of disabling fibromyalgia." JS at 39. Not so. Certainly, a person can have fibromyalgia and not exhibit any muscle atrophy. Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) ("[F]ibromyalgia is not always (indeed, not usually) disabling."). If, however, a person claims that her fibromyalgia is so severe that it causes her to spend the most of her life lying down, as Plaintiff testified in this case, then that person should exhibit some loss of muscle strength and atrophy. Per the above-cited authorities, the inconsistency between Plaintiff's testimony and the clinical findings that she does not exhibit muscle atrophy or other physical manifestations of chronic pain was a valid reason for the ALJ to discredit her testimony.

There are other conflicts between Plaintiff's testimony and the medical evidence in this case. Even as to pain, on a scale of 1-10, Dr. Green indicated that her pain ranged between 4 (the lowest number designated "moderate") and 9 ("severe") while Dr. McIvor circled a range from 4-6 (the "moderate" range). AR 431, 349. Both said Plaintiff's condition would cause her to experience "good days" and "bad days." AR 435, 353. In contrast, Plaintiff testified that she

does not have any "good days." AR 70. Her self-reported, extreme limitations on daily activities are inconsistent with ever spending days in only the "moderate" range of pain.

The ALJ also pointed to conflicts between Plaintiff's testimony and "the mental status findings as recorded by her own treating source." AR 32, citing to records from Dr. Nallamothu of Inland Psychiatric Medical Group. Dr. Nallamothu opined that Plaintiff's thought process, memory and judgment were all "intact." AR 580. The ALJ also noted conflicts between Plaintiff's testimony and Dr. Cruz's evaluation. AR 32. For example, Dr. Cruz observed that claimant was "in no acute distress," "able to drive to the clinic" and "able to hear the conversation across the examining room." AR 439, 441. Dr. Cruz opined that claimant could lift or carry ten pounds frequently and stand or walk for 6 hours in an 8-hour day. AR 444. These opinions are inconsistent with Plaintiff's testimony that her pain interferes with her concentration and functioning to such a severe extent that she has trouble hearing, speaking, thinking, remembering and following simple instructions like a cookie recipe. Thus, the ALJ's adverse credibility determination is supported by substantial evidence.

## V. CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: October 06, 2015

_____
KAREN E. SCOTT
United States Magistrate Judge